## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jacob R.,<br><br>               Plaintiff,<br><br>v.<br><br>Andrew Saul, Commissioner of Social Security,<br><br>               Defendant. | Case No. 19-cv-2298 (HB)<br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Jacob R. seeks judicial review of a final decision by the Commissioner of Social Security that denied his application for supplemental security income ("SSI"). This matter is presently before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court find that the Commissioner's decision was supported by substantial evidence on the record as a whole and therefore denies Plaintiff's motion and grants Defendant's motion.

## I.    Background

      Plaintiff filed an application for SSI on December 30, 2015, alleging a disability beginning on that date due to reading comprehension and math difficulties, a developmental disorder, and left eye issues. (R. 10, 191–204, 229.)[1] He was nineteen years old on the date he filed the application. (R. 28.) Plaintiff attended special

---

[1] The administrative record (R.) is located on the docket at ECF No. 12.

education classes in high school and graduated in 2015.  (R. 230.)  He had no past

relevant work (PRW) at the substantial gainful activity (SGA) level.  (*Id.*)  He worked

part-time as a dishwasher for at least three years after high school.  (R. 20, 269.)

Plaintiff's SSI application was denied initially and on reconsideration, and

Plaintiff requested a hearing before an administrative law judge (ALJ).  (*See* R. 10.)

The ALJ convened a hearing on August 14, 2018, at which Plaintiff, Plaintiff's mother,

and vocational expert Kimberly E. Eisenhuth testified.  (*See id.*)  Plaintiff testified he

took special education classes in math and another subject in high school but otherwise

was in mainstream classes.  (R. 45–46.)  After graduating from high school, he lived in an

apartment while attending post-secondary school, but moved home after a year to save

money.  (R. 48.)  His parents helped him manage bills.  (*Id.*)  Plaintiff testified he did not

work full time because he attended school, socialized with friends and family, and

preferred to maintain his routine and habits.  (R. 54–55.)  He rarely needed redirection at

work and frequently took the initiative to perform tasks beyond his assigned job duties.

(R. 55–56.)  He purchased a car and paid for the insurance.  (R. 61.)

On November 8, 2018, the ALJ issued a written decision denying Plaintiff's SSI

application.  (R. 10–30.)  Following the five-step sequential evaluation procedure

described in 20 C.F.R. § 416.920, the ALJ determined at step one that Plaintiff had not

engaged in SGA since December 30, 2015.  (R. 12.)  Although Plaintiff earned $5,457.96

in 2016, $10,424 in 2017, and $2,438 in the first quarter of 2018, those earnings did not

reach the level of SGA.  (R. 12, 211–13.)  At step two, the ALJ found Plaintiff had severe

impairments of autism spectrum disorder (ASD) and borderline intellectual functioning.

(R. 12.)  The ALJ found at step three, however, that neither of those impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 13.)  The ALJ specifically considered listings 12.10 (ASD) and 12.11 (neurodevelopmental disorders).  (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity (RFC).  (R. 19.)  The ALJ's assessment included, *inter alia*, the following observations and findings.  Plaintiff took classes at Pine Tech and intended to graduate in 2019.  (*Id.*)  He lived with his parents to save money but had lived on his own before and believed he could do so again.  (*Id.* at 19–20.)  Plaintiff had worked as a dishwasher at Grand Casino three days a week for the past three years.  (R. 20.)  Plaintiff testified he wanted to work part-time so that he could see his friends and family, engage in hobbies, and go to school.  (R. 21.)  An employer questionnaire revealed that Plaintiff performed adequately and did not need special assistance.  (*Id.*)  Plaintiff had not taken any cognitive classes or therapy since high school.  (*Id.*)  He had a bank account and a debit card, and his mother's name was also on the account.  (R. 20.)  His car payment was sometimes late.  (*Id.*)

The ALJ gave partial weight to a medical opinion from examining psychologist Martin Trulsen, Ph.D., LP.  (R. 22.)  The ALJ accepted Dr. Trulsen's opinions concerning Plaintiff's ability to interact, concentrate, and maintain pace, but rejected the opinion that Plaintiff was markedly limited in tolerating stress and pressure.  The ALJ rejected that particular opinion as inconsistent with other evidence of Plaintiff's mental functioning, Dr. Trulsen's own examination findings, and Plaintiff's work and daily

3

living activities.  (*Id.*)  The ALJ also deemed Dr. Trulsen's opinion that Plaintiff required support or substantial support for his ASD-related symptoms vague and inconsistent with the record and found Dr. Trulsen's concern about Plaintiff's ability to manage his own funds also inconsistent with the record.  (*Id.*)

Similarly, the ALJ credited some opinions reached by examining psychologist Gerry T. Ouellette, MS, LP in a June 2016 evaluation but found other opinions inconsistent with the record.  (R. 23.)  Specifically, the ALJ rejected as vague or inconsistent Dr. Ouellette's opinions that Plaintiff needed support for social communication and to control repetitive behavior, that Plaintiff had trouble with problem solving, that Plaintiff needed significant supervision to follow directions and to work at a competitive pace, and that Plaintiff needed a sheltered work environment, ARMHS services, and a guardianship.  (*Id.*)

The ALJ gave great weight to most of the opinions of state agency psychological consultants—including the conclusion that Plaintiff's mental impairments caused no more than moderate limitations—due to their specialized knowledge and the consistency of their opinions with the record as a whole.  (R. 25.)  The ALJ rejected much of Plaintiff's mother's testimony as inconsistent with other evidence of record.  (*Id.*)  The ALJ also discounted a job counselor's letter written in January 2018 as inconsistent with and unsupported by the record.  (R. 27–28.)

The ALJ ultimately determined Plaintiff's RFC would allow him to do

a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple routine and repetitive, fixed and predictable types of tasks and instructions that are fixed and predictable

> both in the nature of the task and in the location of the tasks to be
> performed from day to day, and these tasks would align with a specific
> vocational preparation (SVP) of a one or two as defined in the Dictionary
> of Occupational Titles, also occasional brief and superficial contact with
> coworkers and supervisors[;] however, these are the types of tasks that can
> be performed independently meaning they would not require collaboration
> or teamwork with coworkers and would not require direct serving of the
> public, and no fast paced high production quota type work such as might be
> found along an assembly line.

(R. 19.)  Because Plaintiff had no PRW to consider at step four, the ALJ proceeded to

step five.  At that point, in view of Plaintiff's RFC and relying on the testimony of the

vocational expert, the ALJ concluded that Plaintiff could successfully adjust to other

work that existed in significant numbers in the national economy, such as a kitchen

helper, laundry worker, or machine feeder.  (R. 29.)  Therefore, Plaintiff was found not

disabled.

The Appeals Council denied Plaintiff's request for review, which made the ALJ's

decision the final decision of the Commissioner.  (R. 1.)  Plaintiff then filed this action

for judicial review.

## II.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining

whether substantial evidence on the record as a whole supports the decision.  42 U.S.C.

§ 405(g).  "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion."

*Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*,

201 F.3d 1010, 1012 (8th Cir. 2000)).  The Court must examine "evidence that detracts

from the Commissioner's decision as well as evidence that supports it."  *Id.* (citing *Craig*

*v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's

decision simply because substantial evidence would support a different outcome or the

Court would have decided the case differently.  *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210,

1213 (8th Cir. 1993)).  In other words, if it is possible to reach two inconsistent positions

from the evidence, and one of those positions is that of the Commissioner, the Court must

affirm the decision.  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability.  *See Roth v. Shalala*, 45 F.3d 279,

282 (8th Cir. 1995).  The claimant must establish that he is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).  The disability, not just the impairment,

must have lasted or be expected to last for at least twelve months.  *Titus v. Sullivan*,

4 F.3d 590, 594 (8th Cir. 1993).

## III.   Discussion

Plaintiff challenges the ALJ's assessment of his RFC.  An RFC assessment

measures the most a person can do, despite his limitations.  20 C.F.R. § 416.945(a)(1).

The ALJ must base the RFC "on all relevant evidence, including medical records,

observations of treating physicians and others, and the claimant's own descriptions of his

or her limitations."  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

### A.    The Opinions of Dr. Trulsen and Dr. Ouellette

Plaintiff contends the ALJ erred by rejecting Dr. Trulsen's and Dr. Ouellette's

opinions that he would need a supported work setting.  (Pl.'s Mem. at 3.)  Plaintiff argues

the opinions are consistent with his history of special education classes and one-on-one

support from a paraprofessional in high school, vocational records that he was eligible for

a supported work setting, and a history of needing support for daily living from family

and friends.  (*Id.* at 4.)

An ALJ must consider the following factors when weighing a medical opinion: the

existence of an examining relationship, the nature of the treatment relationship, the

degree to which the opinion is supported by other medical evidence, consistency with the

record, the source's specialty, and any other relevant factors.  20 C.F.R. § 416.927(c).

The ALJ is not required to explicitly discuss each and every factor, as long as she

considers all the factors and gives good reasons for the weight assigned.  *See Combs v.*

*Colvin*, No. 8:12-cv-429, 2014 WL 584741, at *11 (D. Neb. Feb. 12, 2014); *Derda v.*

*Astrue*, No. 4:09-cv-1847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011).

An ALJ may discount or even disregard a medical opinion that is inconsistent with the

record or internally inconsistent.  *See Wagner v. Astrue*, 499 F.3d 842, 849–50 (8th Cir.

2007) (citations omitted).

The ALJ gave only partial weight to Dr. Trulsen's and Dr. Ouellette's opinions

that Plaintiff would need a supported work setting, primarily because the opinions were

not consistent with evidence of Plaintiff's mental functioning.  These inconsistencies are

well-documented in the record.  Plaintiff testified he rarely needed redirection at work

and often took on additional duties.  (R. 55–56.)  Although a job coach initially went to

work with Plaintiff when he started working as a dishwasher, the coach was no longer

7

needed after Plaintiff received training.  (R. 296.)  And while Plaintiff's employer rated

his productivity as 60% of similar employees, the employer also indicated Plaintiff

needed no special assistance, performed tasks at a consistent pace, completed his work in

the same amount of time as similar employees, was not easily distracted, "stay[ed]

focused on his work and [was] consistent at completing tasks," and "handle[d] change

well."  (R. 294–96.)  The ALJ correctly noted there was no evidence that Plaintiff could

not work full-time; to the contrary, Plaintiff testified he chose not to work full-time so

that he could go to school, engage in hobbies, and socialize with his family and friends.

Plaintiff's self-completed Function Report are also inconsistent with a need for a

supported work setting.  Plaintiff reported that he could perform self-care activities,

prepare meals, clean, do laundry, go out alone, drive a car, shop, and attend school.

(R. 253–56.)  Finally, Plaintiff did not take cognitive classes or therapy after high school

(R. 21), which was inconsistent with a need for a supported work setting.

　　　　The ALJ also rejected Dr. Trulsen's opinion that Plaintiff was markedly limited in

tolerating stress and pressure as inconsistent with Dr. Trulsen's own examination of

Plaintiff, other mental status examinations in the record, and Plaintiff's overall

functioning, ability to drive, activities of daily living, and part-time work.  (R. 22.)

The ALJ did not err in this respect.  Dr. Trulsen's mental status examination of Plaintiff

in April 2015 documented an ability to tolerate frustration.  (R. 671.)  Dr. Trulsen

conducted a second consultative evaluation of Plaintiff in June 2016 and found his

capacity for tolerating stress and pressure at work moderately limited, with only

occasional marked limitations.  (R. 692.)  A mental status examination of Plaintiff by

treating provider Gary T. Anderson on March 31, 2016, contained no evidence of an inability to tolerate stress and pressure. (R. 681.) Likewise, Dr. Ouellette's June 2016 evaluation reflected no finding of an inability to tolerate stress or pressure. (R. 702–07.)

The ALJ rejected Dr. Ouellette's opinions that Plaintiff would need support in social communications and to control restricted and repetitive behavior, would need a sheltered work environment, and would need significant assistance to understand and follow directions and to work at a competitive pace, as inconsistent with and unsupported by the record. (R. 22–23.) Substantial evidence supports this conclusion. These opinions are not consistent with Plaintiff's testimony and Function Report, employment records and work history, or activities of daily living, as recounted in detail above. Nor are the opinions consistent with or supported by Dr. Trulsen's findings.

The portions of Dr. Trulsen's and Dr. Ouellette's opinions that were given little weight were also inconsistent with the opinions of the state agency psychological consultants, who found the extent of Plaintiff's claimed limitations not supported by the medical evidence. (R. 93, 112.) An ALJ does not err in relying on a state agency medical consultant's opinion; indeed, she is required to consider it. 20 C.F.R. §§ 416.913a(b), 416.927(e). Here, the ALJ explained that she gave great weight to most of the consultants' opinions because of their specialized knowledge and the consistency of their opinions with the record of Plaintiff's mental functioning as a whole. (R. 25.)

Although alluded to above, it bears repeating that the ALJ did not discredit all of Dr. Trulsen's and Dr. Ouelette's findings and opinions. Indeed, the ALJ accepted many of their opinions and findings, explicitly describing how they were consistent with and

supported by substantive evidence of record.  For example, the ALJ credited

Dr. Trulsen's findings about Plaintiff's abilities to interact, concentrate, and maintain

pace in a work setting as consistent with mental status examinations, activities of daily

living, and demonstrated abilities at work.  (R. 22.)  The ALJ credited Dr. Ouellette's test

results and findings that Plaintiff needed redirection to stay on task, had low-average

memory skills and impaired delayed recall for visual reproduction recognition,

demonstrated impaired attention and concentration, had borderline to low-average

functioning, exhibited reading and math skills in the third to seventh grade level, and

needed some assistance with paperwork and finances.  (R. 24–26.)  The ALJ incorporated

the creditable limitations in the RFC by limiting Plaintiff to simple, routine, and

repetitive work, with fixed and predictable tasks, fixed and predictable instructions, and

in a fixed and predictable location.  (R. 19.)

Although the ALJ was not required to explicitly discuss each of the § 416.927(c)

factors in her consideration of Dr. Trulsen's and Dr. Ouellette's opinions, the ALJ clearly

also accounted for the lack of a treatment relationship, the lack of supportability by other

medical evidence, the purpose of the evaluations, and other relevant factors—most

notably Plaintiff's successful, long-term, part-time employment.  The Court concludes

the ALJ did not err in her consideration of Dr. Trulsen's and Dr. Ouellette's opinions.

### B.    Plaintiff's Purported Need for a Structured Living Environment

Closely related to the above discussion, Plaintiff contends the ALJ erred by not

considering his need for a structured living environment, as required by Social Security

Ruling (SSR) 96-8p.  This administrative ruling requires an RFC to be based on all

relevant evidence of record, including "[n]eed for a structured living environment." Plaintiff does not identify the structured living conditions the ALJ supposedly failed to take into consideration. Moreover, as discussed above, the ALJ took into account Plaintiff's current living situation with his parents, Plaintiff's testimony that he lived with his parents to save money, and Plaintiff's ability to live mainly independently in an apartment for a year. The Court finds no error with this aspect of the ALJ's decision.

### C.    Plaintiff's Mother's Testimony

Plaintiff's mother testified at the administrative hearing that Plaintiff needed constant reminders to complete tasks, had trouble accepting corrections from supervisors, became agitated by other employees, and would not be able to tolerate prolonged social interactions. (R. 67–69, 70.) Plaintiff's mother completed a function report on March 27, 2016, in which she said he needed direct supervision, forgot tasks, needed constant reminders, was not able to understand time and time constraints. (R. 253–54.)

The ALJ gave little weight to Plaintiff's mother's statements that Plaintiff was limited in accepting criticism, interacting with others, and completing tasks because the extent of those limitations she described was inconsistent with records from his employer and his work history.[2] (R. 26.) Substantial evidence supports this aspect of the ALJ's decision. As recounted above, Plaintiff's employment records evidenced adequate performance, no special assistance needed to complete tasks, a rare need for redirection, and frequent initiative to perform tasks beyond his assigned job duties. There was no

---

[2] Significantly, the ALJ credited Plaintiff's mother's statements about his abilities to live independently, attend school, cook, shop, clean, and manage money. (R. 25–26.)

evidence from Plaintiff's employer that he had difficulty accepting criticism or interacting with coworkers.  Consequently, the ALJ did not err in his consideration of Plaintiff's mother's testimony.

### D.    The Vocational Counselor's July 2014 Report

Plaintiff's vocational counselor, Eric Beager, wrote a letter to the Minnesota Workforce Center on Plaintiff's behalf in January 2018, in which he said that Plaintiff has the following functional limitations: severe difficulty in self-direction and remaining on-task, seriously impeded interpersonal and communication skills, and severe difficulty with verbal communication.  (R. 308.)  Mr. Beager did not opine that Plaintiff was not capable of employment, only that the limitations would affect his employability.  (*Id.*) Indeed, Mr. Beager was working with Plaintiff to search for other employment.  (*Id.*)

The ALJ gave this opinion little weight because Mr. Beager had not worked with Plaintiff on the job and indicated his opinion was based on limited information and a few face-to-face meetings.  (R. 24.)  In addition, Mr. Beager did not mention Plaintiff's performance in his three-year, part-time position as a dishwasher and his conclusions were inconsistent with Plaintiff's demonstrated abilities in a work setting and other evidence of record.  (*Id.*)  These are valid reasons to discount the weight of Mr. Beager's conclusions, and the ALJ did not err in doing so.

## IV.   Conclusion

Plaintiff essentially asks the Court to reweigh the evidence of record and reach a different conclusion than the ALJ.  This exceeds the Court's authority on judicial review. Though the Court must consider evidence that supports and detracts from the ALJ's

decision, the Court cannot reweigh the evidence or substitute its judgment for that of the

ALJ.  In this matter, substantial evidence in the record as a whole supports the ALJ's

decision, and the ALJ adequately identified the supporting evidence and discussed the

bases for her findings.

Accordingly, based on all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment [Doc. No. 16] is **DENIED**;

2.      Defendant's Motion for Summary Judgment [Doc. No. 22] is **GRANTED**;

    and

3.      This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 22, 2020              _s/ Hildy Bowbeer_____
                                      HILDY BOWBEER
                                      United States Magistrate Judge